UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IRENE S.[1] O/B/O C.S.,

                      Plaintiff,           **DECISION AND ORDER**

v.                                          1:22-cv-85-JJM

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

        Plaintiff brings this action on behalf of her minor grandson C.S. pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that he was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [5, 6].[2] The parties have consented to my jurisdiction [10]. Having reviewed their submissions [5, 6, 7], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 771-page administrative record [4] is presumed. On July 18, 2019, plaintiff filed an application for social security income benefits on behalf of C.S., alleging disability as of June 28, 2018, due to anxiety and anger issues. Administrative Record [4] at 52-53. Plaintiff's claim was denied initially, and again upon reconsideration. Id. at 78, 94. At plaintiff's request, a hearing was conducted.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

A.     **The Hearing**

On July 14, 2020, Administrative Law Judge ("ALJ") Dale Black-Pennington conducted a telephonic hearing. Id. at 33-51. C.S. was represented by an attorney. Id. At the hearing, plaintiff testified that she became C.S.'s guardian following his mother's incarceration, and that he had trouble with school, particularly in reading and math. Id. at 38, 40-41. C.S. also experienced anxiety and did not sleep well. Id. at 41. He had trouble completing homework and required significant help with schoolwork. Id. at 41-42. He was "immature" and would get easily frustrated and seclude himself. Id. He would occasionally "lash out". Id. He did not focus well, was disorganized, and his handwriting was illegible. Id. at 43-44. He did not read or complete essays. Id. at 44-45. He was reluctant to request assistance and required prompting. Id. at 44.

However, plaintiff testified that C.S. completed 10th grade and was promoted to 11th grade. Id. at 38. He communicated well with adults. Id. at 47. At home, he took out the trash and helped with laundry. Id. at 46. He did not have any known behavioral issues at school. Id. at 47. He had a couple of friends, could care for himself, and his health was otherwise good. Id. at 49-50. He took medication for ADHD and sleep, which helped with his symptoms and did not cause side effects. Id. at 42-43.

B.     **The ALJ's Decision**

On September 23, 2020, ALJ Black-Pennington issued a Notice of Decision denying plaintiff's claim. Id. at 15-25. She found that C.S. had the following severe impairments: anxiety disorder and attention deficit hyperactivity disorder ("ADHD"). Id. at 16. She found that C.S. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). Id.

ALJ Black-Pennington further found that C.S. did not have an impairment or combination of impairments that functionally equals the severity of the Listings. Id. at 17. In making that determination, she assessed C.S. with less than a marked limitation in the domain of acquiring and using information; less than a marked limitation in attending and completing tasks; less than a marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; less than a marked limitation in the ability to care for himself; and no limitation in health and physical well-being. Id. Accordingly, she found that C.S. was not disabled. Id. at 24-25.

**C.     Record Evidence Considered by the ALJ**

In reaching her determination, ALJ Black-Pennington reviewed and evaluated plaintiff's testimony; C.S.'s education records; primary care treatment records; mental health treatment records; a medical source statement of Amy DelBello; a child and adolescent psychiatric evaluation of Christine Ransom, Ph.D.; teacher questionnaires by Angela Wilding, Julie Sackow, and Meghan Gallagher; and a mental health questionnaire by Nicholas J. Aquino, M.D. Id. at 18-24.

In relevant part, C.S.'s education records reflect that he was receiving "special education services through an Individualized Education Plan (IEP)". Id. at 444. Teacher questionnaires by Angela Wilding, Julie Sackow, and Meghan Gallagher indicated that C.S. had limitations in various activities under the domains of acquiring and using information and attending and completing tasks, though their opinions were mixed as to the severity of those limitations. Id. at 321-28, 329-36, 352-59.

## ANALYSIS

Plaintiff argues that Black-Pennington's decision was deficient because: (1) she failed to consider the effects of the structured and supportive setting on C.S.'s ability to function; and (2) she failed to adequately explain why she implicitly rejected portions of opinion evidence that supported marked limitations in the domains of "acquiring and using information" and "completing tasks". Plaintiff's Memorandum of Law [5-1] at 1.

### A.     Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

In determining the disability of children, a three-step sequential analysis is used. *See* 20 CFR §416.924; Melissa C. o/b/o M.C. v. Kijakazi, 2022 WL 167534, *1 (W.D.N.Y. 2022). Step one requires the ALJ to determine whether the child has engaged in substantial gainful activity. *See* id. Step two requires a determination of whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *See*

id. At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment. *See* id.

Equivalence to a listing can be either medical or functional. *See* §416.924(d); Tonya B. o/b/o A.M.C. v. Commissioner of Social Security, 2022 WL 4616971, *2 (N.D.N.Y. 2022). Functional equivalence requires a consideration of how the child functions in six sets of activities called "domains". *See* §416.926a(b); Tonya B., 2022 WL 4616971 at *2. Functional equivalence is established upon a finding of an "extreme" limitation in one domain, or "marked limitations" in two domains. 20 C.F.R. §416.926a(a). "[T]he burden of proof rests on the claimant at each of the three steps." Brown o/b/o C.M.B. v. Colvin, 2014 WL 7272964, *3 (W.D.N.Y. 2014); *see generally* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.     The Effect of a Structured and Supportive Setting**

In determining disability for a child, the ALJ "will consider [the child's] need for a structured setting and the degree of limitation in functioning [he] ha[s] or would have outside the structured setting". 20 C.F.R. §416.924a(b)(5)(iv)(C). The Social Security Administration endorses the common sense position that "if a child needs a person, medication, treatment, device, or structured, supportive setting to make his functioning possible or to improve the functioning, the child will not be as independent as same-age peers who do not have impairments." Social Security Ruling ("SSR") 09-1P, 2009 WL 396031, *6. However, the need for a structured or supportive setting is just one of several factors the Commissioner considers in evaluating the functional effect of a child's impairments. *See* §416.924a(b). The regulations are clear that "[t]he fact that you do or do not receive special education services does not, in itself, establish your actual limitations or abilities". §416.924a(b)(7)(iv).

"[T]he ALJ need not explicitly discuss this issue to pass muster; it is enough if a reviewing court can determine from the decision that the ALJ complied with the regulation". Alicia B. on behalf of D.L.B v. Commissioner of Social Security, 2023 WL 2258555, *3 (W.D.N.Y. 2023); see also Tonya B., 2022 WL 4616971 at *13 ("the regulations only require an ALJ to consider, not necessarily discuss, the effects of a structured setting"). This comports with the general rule that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision'". Cichocki v. Astrue, 729 F.3d 172, 178 (2d Cir. 2013); see also Brault v. Social Security Administration Commissioner, 683 F.3d 443, 448 (2d Cir. 2012) ("[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered"). Nonetheless, "remand may be appropriate if it is evident that the ALJ did not consider this factor". Sarah H. o/b/o D.R. v. Commissioner of Social Security, 2023 WL 2445333, *3 (W.D.N.Y. 2023).

Here, ALJ Black-Pennington reviewed C.S.'s education records, which reflected that, as of 2016, he was receiving "special education services through an Individualized Education Plan (IEP)" that included extended time for tests, a co-teaching placement for English and math, occupational therapy, weekly counseling, "[r]efocusing and redirection as needed", and having an adult check in with him throughout the day. [4] at 19, 444. C.S. was reevaluated in 2017, when he was in seventh grade, and was assessed as having average intelligence, average to above-average skills in math, reading, and expression, but with problem areas in handwriting, punctuation, and spelling. Id. at 19-20, 379-83. C.S. continued to be affected by his issues with attention, anxiety, and effort. Id. at 381. His eligibility for IEP was continued with some modifications, including the discontinuation of occupational therapy. Id. at 382. His most recent IEP evaluation was in 2019, and it recommended that he receive co-teaching services in core

curriculum subjects, individual counseling, and periodic adult check-ins regarding expectations, time management, and feedback. Id. at 388, 391.

In her Decision, ALJ Black-Pennington reviewed and summarized these educational records in detail. Id. at 19-20. In assessing the six functional domains, ALJ Black-Pennington acknowledged that her approach evaluates the "whole child" including consideration of how the claimant functions "in all settings (i.e., at home, at school, and in the community)". Id. at 17. In making her conclusions, she cited specific observations of C.S. while in a structured setting, as well as at home and elsewhere. Id. at 24. This level of discussion has been held to be sufficient to show appropriate consideration of this factor. See Alicia B., 2023 WL 2258555 at *4 ("the ALJ recognized his obligation to evaluate D.L.B. in all settings . . . the ALJ's general discussion of the record evidence includes that pertaining both to D.L.B.'s functioning in his structured school setting and that concerning his functioning outside of that setting").

Certainly, C.S.'s educational records support the existence of some level of limitation, particularly in the domain of attending and completing tasks. See §416.926a(h)(3) ("[e]xamples of limited functioning in attending and completing tasks [include] . . . You repeatedly become sidetracked from your activities . . . You are easily frustrated and give up on tasks, including ones you are capable of completing . . . You require extra supervision to keep you engaged in an activity"). Accordingly, after considering all the evidence of record, including educational records, medical records, opinion evidence, and statements from plaintiff and C.S.'s teachers, ALJ Black-Pennington found that C.S. had some (albeit "less than marked") limitations in the domains of attending and completing tasks as well as in acquiring and using information. [4] at 17, 24. This conclusion is supported by substantial evidence in the record.

In my view, the evidence of record does not require a finding of greater limitation in these domains, such as "marked" or "extreme". *See* §416.926a(e). Whether the evidence could have alternatively supported a finding of greater limitation is not a proper inquiry on appeal. *See* Brault, 683 F.3d at 448 ("[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*'"); Dailey v. Commissioner of Social Security, 2016 WL 922261, *6 (N.D.N.Y. 2016) ("it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support [her] position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record").

**C.     Teacher Opinion Evidence**

Social Security Administration regulations recognize that teachers are an important source of functional information for children. *See* 20 C.F.R. §416.926a(b)(3) ("[w]e will also ask for information from your parents and teachers, and may ask for information from others who see you often and can describe your functioning at home, in childcare, at school, and in your community"); SSR 06-03P, 2006 WL 2329939, *3 ("'[n]on-medical sources' who have had contact with the individual in their professional capacity, such as teachers, school counselors, and social welfare agency personnel who are not health care providers, are also valuable sources of evidence for assessing impairment severity and functioning"). However, such evidence is just one of several types of evidence an ALJ considers in making her determination. *See* SSR 06-03P, 2006 WL 2329939, *1 ("we will consider all of the available evidence in the individual's case record. This includes, but is not limited to, objective medical evidence; other evidence from medical sources, including their opinions; statements by the individual and others about the impairment(s) and how it affects the individual's functioning;

information from other 'non-medical sources' and decisions by other governmental and nongovernmental agencies").

In her teacher questionnaire, Ms. Wilding checked the boxes under the heading of Acquiring and Using Information indicating that C.S. had "a serious problem" in the areas of comprehending oral instructions; understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; expressing ideas in written form; and learning new material. [4] at 322. Under the heading of Attending and Completing Tasks, Ms. Wilding marked that C.S. had "a very serious problem" in the areas of organizing own things or school materials; completing class/homework assignments; completing work accurately without careless mistakes; and working at reasonable pace/finishing on time, as well as "a serious problem" in the areas of focusing long enough to finish assigned activity or work; and working without distracting self or others. Id. at 323. For her part, Ms. Suckow marked that C.S. had "a serious problem" in the areas of understanding and participating in class discussions; sustaining attention during play/sports activities; focusing long enough to finish assigned activity or task; and completing class/homework assignments; as well as "a very serious problem" in the area of organizing own things or school materials. Id. at 330-31.

Conversely, Ms. Gallagher, in her teacher questionnaire, did not mark any areas of activity as "a serious problem". Id. at 353-54. She did, however, mark several activities under the headings of Acquiring and Using Information and Attending and Completing Tasks as "an obvious problem", which, according to the form, is a step below "serious". Id. ALJ Black-Pennington found Ms. Gallagher's assessment to be "mostly persuasive", while finding Ms. Wilding and Ms. Sackow's assessments only "partially persuasive". Id. at 23. ALJ Black-

-9-

Pennington cited as support for this weighing C.S.'s academic records showing satisfactory academic progress and the "other evidence of record". Id.

Plaintiff argues that ALJ Black-Pennington failed to adequately explain her departure from the opinions of teachers Ms. Wilding and Ms. Suckow, which she argues supported marked findings in the domains of "acquiring and using information" and "attending and completing tasks". [5-1] at 12-16. There are problems with both parts of this argument.

First, despite plaintiff's suggestion to the contrary, a teacher's assessment of "serious" or "very serious" problems on these types of questionnaires does not necessarily equate to "marked" or "extreme" limitations in a particular domain. See White o/b/o T.R.W. v. Berryhill, 2019 WL 1367382, *5 n.3. (W.D.N.Y. 2019) (citing cases). The questionnaire does not define those terms, and a teacher cannot be reasonably expected to have the program knowledge that, for example, a state agency physician would have. See 20 C.F.R. §404.1513a(b)(1) ("[s]tate agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). In this case, the state agency physicians (Dr. Marks and Dr. Wang) specifically noted and accounted for these teacher questionnaires responses, and interpreted them to be consistent with less-than-marked limitations. See [4] at 56, 68.

Second, while the ALJ's explanation for affording Ms. Wilding and Ms. Suckow's opinions lesser weight is admittedly brief, the court is not limited to considering just the stated reasons. "An ALJ does not have to state on the record every reason justifying a decision." Brault, 683 F.3d at 448. The courts are required to "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a

whole, to support the Commissioner's decision and if the correct legal standards have been applied". McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).

Here, the ALJ's step three determinations are supported by substantial evidence in the record. In addition to Ms. Gallagher's questionnaire responses, ALJ Black-Pennington relied on objective and subjective reports in C.S.'s educational records, which showed, among other things, that he had no behavioral intervention plan in place, that he was progressing academically, and that he was able to save money, budget, and drive himself. [4] at 20, 388. His grades were average and his full-scale IQ score was 102. Id. at 19-20, 350, 380. The medical evidence further supported ALJ Black-Pennington's conclusions, as neither the state agency physicians nor the consultative examiner Christine Ransom, Ph.D., assessed C.S. to have marked or greater limitations in any domain. Id. at 22, 52-59, 62-72, 473-76. The medical examiners considered C.S.'s ADHD symptoms to be in remission with medication. Id.

Such evidence of record has been found to constitute substantial evidence to support a denial of disability. See Ryan on Behalf of V.D.C. v. Commissioner of Social Security, 2022 WL 17933217, *2 (2d Cir. 2022) ("[f]ollowing discussion of the evidence, the ALJ reasoned that V.D.C. passed to every grade level without being held back, that he showed improvement with academic grades and intellectual tests, on which he scored at or near the average range, and that no consultative examiner determined that V.D.C. had marked or extreme limitation in acquiring and using information"). While there is also evidence that cuts in favor of plaintiff's claim, the court is prohibited from reweighing the evidence on appeal. See Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it").

-12-

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [6] is granted, and plaintiff's motion [5] is denied.

**SO ORDERED**.

Dated: August 14, 2025

<u>/s/ Jeremiah J. McCarthy</u>
JEREMIAH J. McCARTHY
United States Magistrate Judge